THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

ALEXIS V.M. CARTER,

      Defendant.

Case No. 18-20082-03-JAR

## MEMORANDUM AND ORDER

This matter is before the Court on *pro* se Defendant Alexis V.M. Carter's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 199). The Government opposes the motion.[1] As described more fully below, the Court dismisses Defendant's unexhausted claims and denies her motion for compassionate release with respect to her exhausted claims.

I.  **Background**

On September 23, 2019, Defendant waived indictment and pled guilty[2] to a two count Information.[3] Count 1 charged a violation of 21 U.S.C. § 846 through conspiracy to (1) distribute and possess with intent to distribute heroin, methamphetamine, and a mixture containing fentanyl and heroin, in violation of 21 U.S.C. § 841(a)(1); and (2) maintain a drug-involved premise in violation of 21 U.S.C. § 856(a)(1). Count 2 charged a violation of 21 U.S.C. § 860a through possession with intent to distribute methamphetamine, in violation of 21

---

[1] Doc. 203.

[2] Docs. 82, 83, 84.

[3] Doc. 81.

U.S.C. § 841(a)(1), on premises where an individual under the age of 18 was present and resided.[4]

The Presentence Investigation Report ("PSIR")[5] held Defendant accountable for possessing three kilograms of "ice" methamphetamine, which established a base offense level of 36; added enhancements for firearm possession, maintaining a drug premise, and presence of a minor; subtracted a reduction for acceptance of responsibility reduction. The final calculation was a total offense level of 39 and a criminal history category of III. The Court adopted the PSIR without objection by the parties. Defendant's guideline range was 324 to 405 months.

On September 14, 2021, this Court granted a motion for downward departure from the guidelines range and sentenced Defendant to 160 months of imprisonment (100 months on Count 1 and 60 months on Count 2, to run consecutively), followed by three years of supervised release.[6]

Defendant is currently incarcerated at Waseca FCI with a release date of February 9, 2029.

## II. Discussion

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.' One such exception is contained in § 3582(c)(1)."[7] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[8] permits a court to reduce a term of imprisonment "upon motion of the defendant

---

[4] *Id.*

[5] Doc. 96.

[6] Doc. 176.

[7] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (alteration in original) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[8] Pub. L. No. 115-391, 132 Stat. 5194.

after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[9] The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[10] If the Court grants the motion, however, it must address all three steps.[11]

### A.   Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[12] Defendant moves this Court to grant her compassionate release on five independent grounds: (1) an alleged Prison Rape Elimination Act[13] violation when Defendant was housed at FCI Tallahassee; (2) sentencing disparities between actual methamphetamine and methamphetamine mixture; (3) failure of the Bureau of Prisons ("BOP") to properly treat her medical concerns; (4) the lack of rehabilitation programs in

---

[9] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[10] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[11] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[12] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[13] Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (codified at 34 U.S.C. §§ 30301–30309).

BOP because of systemic lockdowns; and (5) substantial assistance Defendant provided to BOP officials.

Defendant raises both exhausted and unexhausted claims in this case. On May 8, 2023, she sent a request for compassionate release to the Warden at FCI Waseca based on "Medical conditions (lack of timely and adequate care), family circumstances, and also a PREA."[14] On June 20, 2023, the Warden denied Defendant's request for compassionate release.[15] The Government concedes, and the Court finds, that those three claims for relief are duly exhausted.

However, the other claims Defendant raises in this case are not exhausted because Defendant failed to raise them in her request to the Warden. The Court thus dismisses the following unexhausted claims: (1) sentencing disparities between actual methamphetamine and methamphetamine mixture,[16] (2) the lack of rehabilitation programs in the BOP because of systemic lockdowns,[17] and (3) Defendant's substantial assistance of BOP officials.[18] The Court thus dismisses these claims without prejudice.

### B.   Extraordinary and Compelling Reasons

---

[14] Doc. 199-5.  Though Defendant listed "family circumstances" as a reason for compassionate release in her request to the Warden, she does not raise this as a basis for compassionate release in this motion.

[15] Doc. 203-2.

[16] Even if the Court were to agree with Defendant's argument and find an extraordinary and compelling reason based on a policy disagreement with the disparity between calculation of actual methamphetamine and methamphetamine mixture, it would make no difference in this case. Defendant was held accountable for three kilograms of "ice" methamphetamine. Based on that quantity and various guideline enhancements, her guideline range was 324 to 405 months, based on a total offense level 39 and criminal history category III. Had the methamphetamine been calculated as a methamphetamine mixture, her resulting guideline range would have been 210-262 months, based on a total offense level 35 and criminal history category III—still much higher than the 160-month sentence the Court imposed in this case.

[17] This is essentially a conditions-of-confinement claim, which is more properly raised in a motion filed in the district where a defendant is confined, pursuant to 28 U.S.C. § 2241. Moreover, Defendant's BOP record demonstrates that she has availed herself of at least 32 educational classes while incarcerated. See Doc. 203-3.

[18] 18 U.S.C. § 3582(c) does not provide an avenue for relief based on postconviction cooperation. Fed. R. Crim. P. 35 provides an avenue for this, upon motion by the government.

Section 3582(c)(1)(A)(i) requires a district court to find that "extraordinary and compelling reasons" warrant a sentence reduction before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[19] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[20] Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[21] Thus, § 3582(c)(1)(A)'s consistency requirement did not constrain the Court's discretion to consider whether extraordinary and compelling reasons warranted a sentence reduction.[22]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the Bureau of Prisons or a defendant."[23] The policy statement lists grounds that constitute extraordinary and compelling circumstances and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence" where there has been a change in law.[24] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and

---

[19] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[20] *Id.*

[21] *See id.*

[22] *Id.* at 836–37.

[23] *United States v. Bradley*, 97 F.4th 1214, 1217 n.1 (10th Cir. 2024).

[24] U.S.S.G. § 1B1.13(b).

5

consequence to the specified reasons."[25]  Rather, the catch-all provision allows the Court to consider any circumstances that are similar "in gravity" to the listed categories.[26]

### 1. Medical Circumstances

First, Defendant alleges that she has medical conditions for which the BOP has failed to provide timely and adequate medical care.  Defendant claims she has serious health conditions that resulted in hospitalization, emergency surgery, and blood transfusions.

The Court has examined the medical records Defendant attached to her motion, which document Defendant's hospitalization at Stillwater Medical Center, in Stillwater, Oklahoma.[27]  Defendant was hospitalized from November 23 to November 26, 2021, for acute appendicitis, upper gastrointestinal bleed, and acute blood loss anemia from gastric ulcers and prerenal acute kidney injury.  She had a laparoscopic appendectomy during this hospitalization.  She received a total of 5 units of red blood cells during hospitalization, was monitored for two days after surgery, and was discharged with no further episodes of bleeding, stabilized hemoglobin levels, and normal renal function.[28]  Nothing in the medical records suggests that Defendant's acute appendicitis or other diagnoses were caused by the BOP failing to provide timely and adequate medical care.  Defendant presented at the hospital with abdominal pain, and medical practitioners provided surgery and treatment that resolved Defendant's appendicitis, anemia, blood loss, and prerenal acute kidney injury prior to discharge.  Defendant claims that she requires ongoing medical care but provides no medical records other than those relating to her surgery and hospitalization in November 2021.

---

[25] U.S. Sent'g Guidelines Manual, § 1B1.13 supp. to app. c, at 207 (explaining reason for amendment 814).
[26] *Id.*; U.S.S.G. § 1B1.13(b)(5).
[27] Doc. 199-2 at 3–59.
[28] *Id.* at 4–5.

Section 1B1.13(b)(1) provides that extraordinary and compelling reasons exist where the defendant suffers from a "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process," such that the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which she is not expected to recover."[29] Likewise, extraordinary and compelling circumstances exist where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[30] Defendant's current circumstances fit none of these qualifications.

As reflected in the medical records provided by the Government, Defendant's current health is relatively normal.[31] While she suffers from various medical issues, none are serious as contemplated by the Sentencing Guidelines policy statement. She takes prescribed medications for asthma, attention deficit hyperactivity disorder, post-traumatic stress disorder, depression, and migraines.[32]

In her motion, Defendant does not claim that her ongoing medical conditions require durable medical equipment or that she requires assisted living or assistance with self-care.[33] None of her conditions are terminal or serious, and they do not require long-term or specialized medical care that is not being provided. In short, the Court finds that Defendant has not shown

---

[29] U.S.S.G. § 1B1.13(b)(1).

[30] *Id.* § 1B1.13(b)(1)(C).

[31] Doc. 204-1 at 9–145.

[32] *Id.*

[33] Doc. 199-1 at 4.

7

that she has ongoing medical conditions that are not being adequately addressed or that she has incapacitating medical conditions.

### 2. Prisoner Rape Elimination Act (PREA) Violation

Defendant alleges that she was sexually harassed by a transgender inmate who was transitioning from male to female while both were housed together in the segregated housing unit (SHU) at FCI Tallahassee between approximately February 3, 2023, to February 14, 2023.

Section 1B1.13(b)(4) of the Guidelines provides that extraordinary and compelling reasons exist where a defendant is a victim of abuse, in that

> The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
> (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
>
> (B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.[34]

Defendant does not allege that the inmate who sexually harassed her was, or was acting at the direction of, a correctional officer, an employee or contractor of BOP or a person who had custody or control over Defendant.

Section 1B1.13(b)(5) also provides that extraordinary and compelling reasons exist if the defendant can present "any other circumstance or combination of circumstances" that are "similar in gravity to those described in paragraphs (1) through (4)" of Section 1B1.13.[35] But

---

[34] U.S.S.G. § 1B1.13(b)(4).

[35] *Id.* § 1B1.13(b)(5).

8

Defendant does not show that her being sexually harassed by another inmate is similar in gravity to Section 1.B1.13(b)(4). For that section defines sexual abuse as a sexual act as defined in 18 U.S.C. § 2246(2), meaning contact between genitalia, or contact with genitalia, or intentional touching of genitalia not through the clothing.[36] BOP records reflect that Defendant alleged the other inmate subjected her to unwanted sexual advances, displayed their penis, masturbated in her presence, and on at least one occasion, touched her back while she was sleeping.[37] But Defendant indicated on a form questionnaire that there was no contact between or with genitalia and no intentional touching of genitalia directly or through the clothing.[38] And she told a BOP investigator that there was no touching of a sexual nature.[39]

Defendant's allegations were nonetheless troubling, and BOP responded appropriately. BOP conducted a medical and psychological assessment of Defendant.[40] And BOP transferred Defendant and the alleged perpetrator, so that Defendant is no longer housed in the same facility as the alleged perpetrator.[41] Defendant fails to show an extraordinary and compelling reason for relief on this ground.

### C. Section 3553 Factors

Since the Court finds that Defendant has not shown an extraordinary and compelling reason for compassionate release in this case, the Court need not consider whether the § 3553 factors warrant a reduction in sentence. Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence

---

[36] 18 U.S.C. § 2246(2).

[37] Doc. 204 at 1–2, 8.

[38] *Id.* at 6–7.

[39] *Id.* at 8.

[40] *Id.* at 2.

[41] *Id.* at 3.

imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[42]  "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[43]

In any event, even if Defendant had shown an extraordinary and compelling reason for compassionate release, the § 3553 factors would not warrant a reduction in sentence.  The nature and circumstances of the offense weigh heavily against compassionate release.  Defendant was an active participant in a drug-trafficking organization that distributed methamphetamine, cocaine, and fentanyl-laced heroin that resulted in the deaths of at least four addicts.  Defendant was the sole or main distributor of methamphetamine in the organization.  She lived with several other members of the drug-trafficking organization in a house that was frequented by drug customers and protected by a cache of firearms.  Defendant possessed firearms, and on at least one occasion, she traded methamphetamine for a firearm.  Sadly, Defendant subjected her two-year-old child to this environment; he lived in the drug house and slept in the bedroom where Defendant and her boyfriend kept their firearms.  Drug customers reported their concerns that Defendant's young child was present during drug transactions and in proximity of firearms.[44]

---

[42] 18 U.S.C. § 3553(a).

[43] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

[44] Doc. 96 at 7–25.

Defendant's sentence of 160 months, which was substantially below her guideline range, is needed to protect the public from further crimes, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct. While Defendant's post-sentence conduct in taking more than 30 educational classes is to be commended, Defendant has also received disciplinary actions over the past year for several violations of BOP rules. In short, the factors under Section 3553(a) simply do not balance in her favor.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for compassionate release (Doc. 199) is **dismissed in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendant's motion for compassionate release based on sentencing disparities between actual and methamphetamine mixture, lack of rehabilitation programs and substantial assistance is **dismissed.**

**IT IS FURTHER ORDERED** that Defendant's motion for compassionate release based on medical circumstances and PREA violation is **denied.**

**IT IS SO ORDERED.**

Dated: April 16, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE